1861-84 Johnny R. Phillips v. Anna Valentine Wharton Oral argument not to exceed 15 minutes per side Mr. Chabot for the petitioner appellate Good morning your honors and may it please the court My name is Ryan Chabot counsel for appellant Johnny Phillips with the court's permission. I'd have to reserve three minutes for rebuttal Your honors this is how the prosecution concluded its summation in mr. Phillips murder trial ladies and gentlemen I keep saying he was shot in the back of the head. That's obvious But don't forget what dr. Shot told us that the pellets were traveling from back to front Okay That doesn't give credence to his story that he was shot from the side and grazed and took a chunk of his head off He was shot from the back and the pellets were from back to forward the pellets went from back to forward Which means that shotgun was fired directly from his back into his head. That's an appendix 373 from this the Commonwealth argued that mr. Phillips Aimed his shotgun at the back of mr. Grotto's head as he retreated to his vehicle and either intentionally or wantonly pulled the trigger But sitting in the Commonwealth's file while they made this argument was actual physical evidence that they did not disclose That showed where the shot ended up that evidence is the x-ray of mr Glotto skull and it is inconsistent with the story that the prosecution told and consistent with mr. Phillips story that mr. Glotto he and mr. Glotto struggled and the guns went off accidentally hitting mr. Glotto indirectly in the head That is because the x-ray shows three things that no other evidence in the case showed First it shows the number of pellets that were in the wound in a direct shot You'd expect there to be a couple hundred pellets in the wound for a shotgun shot of this size And the x-ray shows at most a couple dozen Second it shows the distribution dozen a couple of dozen your honor at most a couple dozen approximately At second it shows the distribution of shotgun shot in the wound if this were a direct shot you'd expect the shotgun shot to be Traveling from the front to the back together in a mass and be congregated in the middle of the wound instead what the x-ray shows is that the shotgun shot is distributed to one side of the wound and Third it allows you to show determine the path that the shotgun shot was traveling with the evidence that shows where the pellets ended up you can draw a line from there to the entrance wound and determine the Path that the shotgun shot was traveling and in this case you see an entrance wound in the center of the head and the pellets Ending up on the side Indicating that this is an indirect shot Any of these three things are favorable to mr. Phillips and Material to the outcome of the trial because the Commonwealth's entire case was predicated on a shot from the front to the back That suggested that mr. Phillips shot mr. Gatto as he walked back to his truck unarmed Execution style Approach that's right your honor the jury rejected. That's right your honor So in this case the jury convicted him of wanton murder and it's important to look at what exactly was the Commonwealth's theory of wanton Murder, what does the evidence show if someone had done execution style with a shotgun right behind the head? So execution style wouldn't there been entrance wounds on the other side of the head? They're right. Yes, right your honor. So the testimony is there would be an exit wound at the other side of the head So that evidence also contributes suggest that mr. Phillips that evidence was already that was already apparent is the what I'm getting at you didn't need the x-ray because They knew there were no exit wounds Everybody knew the shot came from behind the x-ray didn't change that Everybody knew there were no exit wounds And my understanding is everyone was on agreement that the end of the gun and the head was at least three feet Meaning he probably was five feet Right, is that all that's all what the evidence showed no matter what with the x-ray, right? So the only evidence of distance is the testimony that it would likely be at a range of three feet or more So I don't think we can quite get to five feet and what isn't three feet measuring head to end of gun the muzzle That's right. Yes, that's five feet is where the person would have been standing So nobody argued I didn't think that the distance between zero and three feet made a difference as to whether it was execution style I agree with that. That's right So that what this actually adds that it was not available just from the fact that there was no exit wound is that the shot? Was not sufficiently far away that there was an entrance wound, but no exit wound in a direct-on shot I think we could have made that argument based on just the fact that there was no exit wound But what mr. Phillips was precluded from arguing was that this was an angled shot that this was an indirect shot Where is the government argued that this was a direct shot? He aimed it at the back of his head and he either intentionally pulled the trigger and that's intentional murder Or he accidentally pulled the trigger and that's wanton murder because he committed the wanton act of aiming the shotgun Directly at the back of mr. Goddard's head. So Let me put it to you Say this a lot of moving parts here seems to me your best argument is sort of like, where's the beef? Where's the pellets that the government's theory? Would seem that if there's no exit wound there should be lots and lots of pellets the best problem on the other side that I put to you is his argument of kind of a struggle and pushing It's hard to square that with getting three feet away That is You know somehow what he pushed him away and turned him around. So even though the gun was angled Doesn't that sort of negate the struggle idea I don't think it does negate the struggle idea judge Boggs and but let me address first that What we're talking about the Brady materiality standard the fact that this undermines the government's theory that you would expect there to be 200 pellets That's enough on Brady so undermining the government's theory this court can't be confident that if we had been able to show that there should have been 200 pellets in His head if this was this happened as the Connell showed That's enough under Brady because you can't be confident the jury would have reached the same conclusion As far as you can't be confident that the jury would have reached the same conclusion So I'm sorry and as far as the struggle theory goes, this is supportive of this of mr Mr. Phillips's theory of self-defense Because what he says essentially happened is that he comes out of the truck holding the gun and mr God or charges had him with a knife then. Mr Glado tries to take the shotgun away from him and there's a struggle and during the struggle he pushes him away and mr Glado gets turned and he gets hit indirectly in the back of the head now this evidence makes that Theory now, I mean Phillips's testimony isn't a model of clarity Different times is it? No, you're right. Your honor It's not a model of clarity And I think the reason we would be the first to admit that we can't record it recreate the blow-by-blow That happened between these two men and mr Phillips is the first to admit that he calls 9-1-1 and he gives an interview to detective Loomis that night where he says I Think I shot him in the face or the chest So, you know, we're talking about a dark parking lot at 10 o'clock at night and something that happens when you say in the face  implies a face-to-face man-to-man Confrontation and Regardless of how angled it is That's not what happened. You've got to get you've got to get mr. Gov. Mr Sorry the Glado turned around to a significant degree and far away and From the question of whether it undermines confidence Isn't that a significant part of it that you end up with two stories? Neither of which is is extremely consistently Believable. Well, so your honor it is enough under Brady to that it undermines the prosecution's theory It does also support our theory because if things had happened as mr Phillips has consistently said they did then it is an indirect shot help support that theory now it is It's not obvious the blow-by-blow that would have gotten mr. Glado turned sideways, but you know keep in mind that this is a dark parking lot. The men are shoving each other Mr. Glado has been drinking that day. It's a gravel parking lot It is certainly possible that he slips and is falling backward and gets hit in the head Indirectly in the back of the head and really you you don't have to prove innocence And even if the evidence is sufficient, this is not a sufficiency of the evidence case You just have to the jury could still Find you guilty with all of the the the x-ray and your brilliant argument But there's not a sufficiency case, right? That's exactly right your honor. It's a reasonable probability So the Supreme Court has made clear that it doesn't need to be more likely than not I think I'm asking questions along the lines of judge Boggs questions But just to put them this way you have these four options in front of the jury The next two that you'd like to have another shot at our self-defense type Defenses, that's right. No, I'm in the middle of self-defense and I recklessly or negligently shoot him I just have a very hard time understanding that when he gets shot from the back of the head three feet away I just I just don't get that and and you know fairness fairness of the results. Let's be honest about how this is all working I'm quite doubtful if I were advising your client if he had to have the trial again an intentional murder was on the table Which it will not be in the second trial I'm not sure. I would recommend trying it again. I think there's a real risk. He gets intentional murder the beauty of the argument today is That's off the table. That's an implied acquittal. So when we talk about fairness of the result, let's remember how this works out But my real point is I just don't understand how self-defense Applies when you shoot someone three feet away five feet away standing in the back of the head That's what happened. So your honor I I disagree that if the jury were to decide that this wasn't wanton under the wanton instruction that they Necessarily would have except needed to have except the self-defense Theory in order to acquit they could have in both of the bottom charges the manslaughter charge in the reckless homicide charge You have to decide that. Mr. Phillips did something that put mr. Glado in serious risk of harm and if you accept mr. Phillips description of what happened that night I think you could acquit him of all the charges Without I'm sorry all four you could acquit under every three Under every theory based on the fact that what happened that night was not that he acted recklessly or that He acted without regard for mr. Glado safety, but that he simply got out of his truck holding his shotgun because he saw a man coming at him with a knife And then it was mr. Glado's actions of attacking him and struggling That wasn't used. I Mean that's a minimum negligence If it is if the jury would have find that it was Understand that's doesn't seem remotely within the range. Well negligence isn't Negligence is an acquittal in this case your honor. I mean none of the theories would be enough I thought one of the self-defense theories is you're in self-defense land and you Recklessly shoot them or negligently shoot them. Am I getting it wrong roughly you're getting it right your honor But to take a step back for a second the jury convicted of wanton murder. I know I know And I'm saying the whole point of this I'm trying to put this in the best light for you, which is You want a shot a better shot so to speak of these two lesser charges? That's right your honor or an acquittal based on self-protection altogether. That's right But in this case what the jury did do was convicted of wanton murder under the theory that the government offered them Which was that the wanton act was mr. Phillips aiming his shotgun at the back of mr Glados head as he walked away and then if you are to accept the wanton murder theory He accidentally pulled the trigger as opposed It says it says created a grave risk of danger extreme indifference to human life and judge Caldwell Said that's that's a very fair characterization of the evidence Your honor and it's one that rejects the government's first theory It does reject the government's first theory But it's important to look at what was the government's second line theory the government's second line theory was to tell the same story the government never had to grapple with the possibility of an indirect shot, but I mean you're treating arguments as evidence and We all know that's not how we were supposed to do it We don't we don't come and reviewing directly reviewing convictions and say let's ask ourself What the government said now look at the evidence we ask. What does the evidence show? Your honor the evidence that the government argued that the evidence showed that this was a direct shot from the front of the head To the back of the head. I mean the key evidence here is the testimony of dr. Schott who's called back on redirect and asked You have to put took pellets out of his head She says yes I did and then she says does that suggest to you that the pellets were traveling from the front to the back and if you Look at the closing summation that I quoted to start the argument the prosecution emphasizes that point heavily They said remember what dr. Schott told you there's no dispute that he was shot in the back of the head But the pellets were traveling from the back to the front that means that this shot went straight front to straight Remind me on the evidence on in the trial. I thought there was ambiguity about the path of the pellets Doctors, I thought it was clear that back of the head thought it was clear at least three feet I thought there was some uncertainty about the path point in the evidence not the government arguments the evidence So dr. Schott's testimony is the key point on this and this is the evidence that the government emphasizes in summation to tell the jury that they Intentional or wanton homicide and her redirect is the question is clarifying You said you also examined the back of the head correct answer the pellets entered the back of the head Pellets not bullets pellets entered the back of the head. Did you recover some of those pellets? Yes, I did and from where did you recover them from inside the head? Okay, and that would lead you to believe that the direction of the pellets track was Answer in general the direction was back to front question meaning the back of mr. Glados head to the front answer. Yes, no further questions on redirect Well, tell me the Eureka point there. I don't get it. Everyone's agreeing He's turned around which is problematic when it comes to self-defense but the evidence that the government is putting on here is that he was turned around and shot directly from the back of the head to the front of the head and this x-ray undermines that theory and The government used that evidence to tell the jury convict under either of these two counts Their first line is intact convinced under convict under intentional murder. There's one shot. I mean, no, no one's perfect shot. I mean Everything lines up perfectly just with this It's dark Quoting you're saying it wasn't from the back to the front. It was from the back Exiting from the side or not exiting but in the angle because apparently it didn't exit under anybody's theory That's right And and just although there's something about pellets being in the windshield of the car or dings on that Does that make any difference at all? No, your honor There's evidence that there's not all the pellets are in the wound Some of the pellets are outside the wound But there's no evidence available to him to argue that the majority the mass have shot 200 or so are not in the wound And therefore this is a glancing blood Judge Sutton's it. Yeah, I'm sorry. Thank you We have used a lot of your time, but I had two quick questions. I guess quick in the question of the two lesser instructions Judge Sutton used the phrase that it was just negligence as I read it The difference is he failed to perceive a substantial and unjustifiable risk that he was mistaken in his belief of self-defense But if your argument would be that it really was self-defense Then you would defeat that one as well. That is Negligently in your actions wouldn't get you in there if your belief was reasonable. That's right Second question is we didn't get into this at all But the jury sentenced here and gave him 30 years There are a bunch of cases that say materiality can be guilt or punishment But those are usually death penalty cases. Are there cases or law if your argument is gee if they knew Where's the pellets? They might have given him 20 years or 10 years or five years. Is there law one way or the other? Is that good enough for? Materiality so your honor. I looked for cases talking about this exact same thing But it's sort of a unique aspect of the Kentucky courts here that it's the jury that recommends a sentence that's right, so the case law is very clear that its materiality goes to sentence or to conviction and You're right that most of the cases Brady itself is a sentencing case about a capital case But you know the question that this court has to answer in addition to the answer is the language Would be good for you on that theory, but there's no cases that directly support it That's right your honor, but the courts would need to the jury does do the sentence the jury recommends a sentence That was the range for this particular conviction. That's right. Well the Statutory minimum was 20 years and the jury based on the test was the cap 30 I'm that's what I'm I'm asking what the range was 20 to 30. It was higher than 30 your honor I believe that they could have to life 20 to life So the court also has to be confident that even if with this evidence We would have been able to undermine the government's theory and support very recommended 30 and the judge accepted that that's that's that would happen That's right. That's right. Thank you your honors. Thank you counsel You May it please the court counsel My name is Courtney Hightower. I'm from the Kentucky Attorney General's office representing the warden and a valentine in this case the first thing I'd like to do is I'd like to clear up a number of fallacies that are in their brief and both their The reply brief and in the brief-in-chief First of all, the government never argued that this was an execution style murder in closing argument The prosecutor argued that the victim was shot At a distance of a probably about four feet as he turned and the theory was that he was turning to go back to his Truck after mr. Phillips pulled out a shotgun The Second fallacy that's in their briefs is that there was some grand struggle in this case I reviewed Repeatedly mr. And the only evidence we have is from mr. Phillips and I reviewed mr Phillips statements to the police and he said the first time he called the 911 operator and he said that the victim came at him with a knife and He shoved him away with the gun and the gun went off and the victim was about two to three feet away Then when he talked to the detective he said The victim came at me with a knife I shoved him with the gun and It went off immediately and he was about four inches away from me. So there was no evidence of a grand struggle The third thing is that they have the last thing you said he pushed him away And did you say four inches or is that that was his statement to detective Loomis? It was a lead by Phillips to buy Phillips And that's the only evidence that we have about actually what happened during the altercation But although nobody seems to think that that's actually what happened about the four inches Be correct. Otherwise, it would have come out the all the testimonies. It would have come out the front of the head Yes, your honor. He was mistaken Whether pro or con on that point, thank you the third thing that they talk about repeatedly is that this was some sort of Grazing or a glancing blow to the back of mr. Glow toes head. I have here an autopsy photo That was introduced at trial that I also attached to an objection that I made That's not in our record, right? Yes, it is because I objected to the evidentiary hearing in this case and in attached to my objection I attached several autopsy photos and that's the record at reference in our record because that would be the record entry I don't have a page ID number, but at the record entry is 103. I Thought I had looked for that, but thank you So this was not it was a doctor shot was very specific She said it was a penance picture at this distance. Is he lying face down or face up? He's lying on his side on the autopsy table Okay So that that says it looks it looks pretty darn bad on the other side. You've got the x-ray Yes, and I have a copy of that as well that I do have which the defense would tend to say Where's the pellets? well, and the government's theory is front to back and Everybody says there are a couple of hundred pellets in the shell and it's not even close I mean when he says there's a couple of dozen You wouldn't have anybody to contradict that would you? Well, I think that dr Schott was very specific in her testimony at the evidentiary hearing She said that because this was a two-dimensional image that you couldn't see all the pellets on this two-dimensional image They also dr. Mr. Day Hughes who was their ballistics expert that testified at the evidentiary hearing his entire Testimony at the evidentiary hearing was predicated upon this fallacy that there's some south some sort of an execution style shooting that all these pellets would which the evidence shows that it was at a distance of at least three feet and probably like judge Sutton said probably more because of the That was muzzle to victim So this was not an execution and so the bullets the pellets would have spread and so anyway And that's what does the evidence show about pellets spreading for three feet between three feet from the end of the gun? And then three feet what I mean is 200 the world we should be talking about and we'll keep saying 200. Is that right? The the Dwight Deskins was the ballistics expert at trial and I don't think that he was asked about the number of pellets I think that came out at the evidentiary hearing when they had a ballistics expert testifying 200 the number though. My recollection is that they said like 170 to 200 okay, and then there's two dozen in there. So well, there's no that's that's incorrect judge Sutton There was she dr. Schott testified at the evidentiary hearing that she removed 19 representative pellets and I asked her specifically at the evidentiary hearing I said were there more pellets in the head and she said I'm sure there were So again that we have a two-dimensional image that doesn't show depth And so you cannot see she was very specific in her testimony at the evidentiary hearing that you could not see all the pellets I mean, that's an argument, but the the jury would be able to take 219 Some intermediate number and decide whether that helps him or not. That is you're kind of making a jury argument To me that says well there could be a lot more and you're right but Could also be maybe not many more just I am sure there were more You know is not well All I can go on is what the medical examiner testified regarding what? What that's all they could go on without the x-ray. That's that's the problem in a Brady case is where we're We're not really retrying the case because otherwise you would win on sufficiency. I have no problem with your winning on sufficiency We're retrying the case with the question what would this Effect have on a juror. Is that a fair way of saying when you said is it? sufficient to undermine the confidence Means confidence about what a juror would have thought is that fair? I think that's fair your honor, but I also think that you have to look at the so in this case We had a status conference with judge the par and judge the par looked at the x-ray and he said I don't know I'm not a medical doctor. I don't know what this says We need to have an evidentiary hearing where we need medical testimonies So somebody can tell me what this shows and at the evidentiary hearing we called dr Schott who is the medical examiner in this case and she testified very specifically what the x-ray showed Their ballistics expert in this case did not know how to read the x-ray so that any conclusions that he drew from the x-ray as As judge Caldwell found were not reliable Dr. Schott at the evidentiary hearing she was very specific in her testimony She said that you could not from this x-ray that you could not see the wound And you could not see the path of the bullet The only thing that you saw were pellets and that they were on both sides of the head That's the only thing she said she said you cannot see the total number of pellets She said that you cannot see the precise location of the pellets and all this was because it was a two-dimensional film And you couldn't there was no depth for to determine and that's not even Considering the fact that there were a number of skull fractures in this case Which could have altered the positioning of the pellets as they ricocheted off the victim skull? So Dr. Schott was very specific in her testimony at the evidentiary hearing and I think all of her testimony showed that this x-ray was not Favorable to mr. Phillips case and showing self-defense and Moving on to whether this was material or not. I think that you all have talked a lot about this Overwhelming evidence in this case the evidence was very very clear that there was a confrontation between mr. Phillips and the victim Mr. Phillips that that Mr. Phillips pulled over. Mr. Gloto pulled in behind him. There was about a half of a car distance between them Mr. Phillips got out of his car with a shotgun that was loaded and he pointed it at Mr. Gloto that is wanton conduct in Kentucky, even if the guy's been chasing you all day threatening to yes, sir Even if the guy's been chasing you and by the way, I'd like to clear that up as well in their briefs They make it sound like that. Mr. Gloto was the aggressor the only aggressor. Mr Gloto was the aggressor but at the party where they were Mr. Phillips said let's take this down the road and they and they and they took it down the road So it was it was a mutual Ruckus as we would say it was a mutual. It was a mutual confrontation. Are there any things about the x-ray that undermine? theories Mr. Phillips counsel raised at the direct at the you know, original conviction an original trial in other words Everyone did everyone agree by the time of say closing arguments after all the evidence was in that the shot came from behind Yeah it away So there's no there's no part of the x-ray that undermines his theories There's no part of the evidence. There's no part of the x-ray that undermines the jury's conclusion that this was wanton murder Well, that's not my question. My question is he wanted an acquittal Correct, and you know Both sides are playing in one one thing that can happen with new evidence is sometimes it helps the defendant in some respects But I said not the x-ray did not you got to make sure you've shown already You weren't didn't understand my question the first time so it's a good idea to make sure you understand at this time He wanted an acquittal on all four That means he was making a lot of different arguments on all four and I'm asking whether the x-ray undermined some of those arguments The answer to that question is I'm not sure So the jury was instructed on all these on the jury's instructed on intentional murder The jury was instructed on wanton murder the jury was instructed on self-defense the jury was instructed on imperfect self-defense they were instructed on man to and reckless homicide and the jury listened to all the evidence and they rejected all of those and It's our contention that the the x-ray did not matter that. Mr. Phillips actions of getting out of the truck and drawing a loaded shotgun and pointing at mr. Four feet away was wanton conduct and Everybody agrees that he was shot in the back of the head Which also undermines any sort of self-defense theory photo by the way that you showed was you tried to introduce at the? Habeas hearing but that wasn't introduced at the trial, right the autopsy photo. Yeah. Yes, it was Autopsy photos were introduced at the trial. Yeah, you just showed us I believe the one this is an autopsy photo in it There were several autopsy photos shown at the trial. Yes Or I think what my recollection is is that? They introduced autopsy photos like this one and then also with the victim's shaved head to show the nature of the wound in the back of the head At trial. Yes said 103. Is that 103 of the habeas record or the trial record? That's 103 in the habeas in the district court And I think that goes back to judge Caldwell's very reasoned opinion that she said That even if you assume that everything that they say is true about this x-ray. It still does not undermine Confidence in the jury's verdict in this case that that it was mr. Phillips was guilty of wanton murder In Conclusion I'd like to go ahead and briefly just conclude if there's no further questions a Kentucky state jury found Mr. Phillips guilty of wanton murder. They listened to all the evidence They were instructed on self-defense and in person imperfect self-defense and they found. Mr. Phillips guilty of wanton murder and I That it is not it should not be a federal court's role to come in and and and disturb That type of finality in the conviction based upon evidence that was both Not favorable and immaterial We would ask you a firm judge Caldwell's opinion below Your honors to begin a couple points about what it seems that is undisputed first Yes, yes, so a couple points about what is undisputed here It's it's there's no dispute about what the government said at trial what the prosecution said, you know I read to you how they summed up the case at the end where they said he pointed the gun at the back of The head and he pulled the trigger The cow we characterized that I don't think makes a material difference but there's no dispute over what that the government's theory was that he pointed the gun at the back of his head as he was Walking away and shot him directly from the rent front of the head to the back of the head It's also not disputed that the x-ray shows the distribution of the pellets now we focused on the number of the pellets in the path of the pellets but the Distribution of the pellets the fact that the x-ray shows the distribution of pellets is not subject to dispute What do we I don't understand what to do with? materiality when all we know is 19 and they stopped counting and I've now seen the back of the head and I'm kind of getting why they stopped counting Why should I assume 19? I don't understand why that should entitle someone to habeas relief your honor We're not arguing premise of the argument that it's a lot closer to 19 Than the norm and I have no idea what to think and now that I've seen the photo I'm just like what so the argument is based on the fact that there is Far fewer than 200 in the head the evidence there is if this had been a direct shot as the government argued It was from the beginning of the trial through their most important witness and to summation. We would expect there to be 170 to 220 now if the x-ray debatably showed 130 pellets 160 pellets something like that This would be a much harder case to make that it was material, but the x-ray itself only shows a couple dozen I don't know if it shows 19, and I don't know if it shows 25 But the point is it shows far fewer than 200 and it also shows the distribution theory Would have been undermined by nothing no exit wounds and that everyone did know The indirect shot theory could have been undermined by no exit wounds your honor But on Brady you don't need to have this be the only evidence that would have undermined the government's theory You know the question is with this additional evidence that shows a couple dozen pellets I mean from three feet away if you just put a shotgun right at someone's head But it's three feet away, and you hit it the perfect direct shot Aren't there exit wounds I think that the testimony is that there would likely be an exit wound your honor They knew that so that one piece of evidence is favorable to mr.. Phillips. There's a number of other Complicated science, it's I've seen one. I've seen a picture of the back There's nothing in the front. There's that's all you need to argue Your honor that doesn't a direct shot that doesn't change the fact very bought that it wasn't a direct shot Which is why intentional murder wasn't the conviction well so wanton murder was the conviction based on the government's theory that the wanton conduct was To shoot him directly in the back of the head from front to back when by accidentally pulling this trigger and to discount Self-defense and to discount self-defense that's right your honor and this evidence supports mr. Phillips self-defense theory because it shows that the shot it tends to show that the shot was at an angle now There is other evidence that mr. Could have you know that was admitted at the trial that supported his theory This is not the only evidence that supports that theory to your point. There's the thing there's mr. Phillips own explanation about what happened that night. There's the fact that there's no exit wound, but the Brady test doesn't ask Does this the only evidence that could have been put on? That would have supported this theory and said this is evidence that there are specific facts that support mr. Mr. Phillips theory and undermines the government's theory that no other evidence showed and that's the number and the distribution and the path now The lack of an exit wound also does support his theory but that doesn't change the fact that Had there been additional evidence that he could have used to impeach the government's main witness and to make his main arguments that we can't be confident the jury would have reached the same conclusion a conviction of wanton murder and a sentence of 10 years above the mandatory minimum 50 years below the mandatory maximum That's also true your honor, but 10 years above the mandatory minimum So we can't be confident that the jury would have reached the same careful balancing of sentencing factors Had it known that there was a lot more evidence that suggested that this was an indirect shot that they were able to hear because The government never disclosed it Thank you your honors Thank You counsel Apologize, how do you pronounce your last name? Is it Shabbat Shabbat? Well, mr. Shabbat Thank you for reminding me, but I also want to thank you For taking this case under the Criminal Justice Act as I mentioned in the case before this one Your willingness to take on this case along with your your co-counsel and law firm Really is a Tremendous asset to the court and benefit to the court and to the Mr. Phillips, so I just want to thank you and appreciate your arguments today and both counsel presented arguments very Effectively and we appreciate that case will be submitted. Thank you